MAX HECHT and ISADORE MILLER, trustee in bankruptcy of LEONARD HOOGMOED, bankrupt, complainants-appellants,

*v.*

LEONARD HOOGMOED and WILLIAM PETERS and AMERICAN FURNISHINGS, INCORPORATED, a corporation of New Jersey, defendants-appellees.

[Submitted May term, 1932.   Decided October 17th, 1932.]

*Messrs. Saltzman & Bunevich* and *Messrs. Minturn & Weinberger,* for the complainants-appellants.

*Mr. Sigmund Unger,* for the defendants-appellees.

,

The opinion of the court was delivered by

WELLS, J.

This is an appeal by the complainants from a decree of the court of chancery, entered on the advice of Vice-Chancellor Lewis dismissing the bill of complaint.

The bill was filed to set aside on the ground of fraud, a sale made March 24th, 1930, by the sheriff of Passaic county to the defendant William Peters, a judgment creditor with a judgment of $2,178.27 against Leonard Hoogmoed, and at this sale, William Peters purchased the merchandise, fixtures and book accounts of Leonard Hoogmoed for the sum of $250—he being the highest bidder at said sheriff's sale.

The proof tended to show that Peters had loaned Hoogmoed $2,500 on a note with which to purchase a small installment dress and cloak business, and that the note was gradually reduced to $2,100 by payments on account. Upon default in payment of the last note being made, suit was brought in the supreme court, judgment obtained, execution issued and a sale of the contents of the store and accounts receivable made.

Peters formed a close corporation under the name of American Furnishings, Incorporated, which he controlled, and which retained the services of Hoogmoed at a small salary to collect the accounts and with the aid of a saleslady to operate the store, which was kept open for six weeks after the sale and was then discontinued.

On April 3d, 1930, Hoogmoed was adjudicated a bankrupt and Isadore Miller was elected trustee.

This bill was filed about two weeks later by the complainant Max Hecht, and on the date of the final hearing, Miller, the trustee, was added as a party complainant.

The reasons for setting aside the sale were (a) fraud, (b) gross inadequacy of consideration, (c) conduct clearly indicating an intention to defraud complainant and other creditors, by preferring the defendant Peters, (d) attempted sale of accounts receivable in violation of the statutory requirement.

Appellant claims that the personalty and accounts receivable sold by the sheriff to Peters for $250 were worth $12,000 and that this price was so grossly inadequate as to be proof of fraud.

The vice-chancellor found that the proof was barren of any evidence of fraud in connection with the sale and that the apparent inadequacy of price was not sufficient to set aside the sale.

The witnesses produced by the appellant to prove the value of the business expressed an opinion of the value thereof more than a year before the sheriff's sale but were not able to testify as to the value at the time of the sheriff's sale.

Fred Skolkin, testifying for the complainant, said that in March, 1929, he sold to Hoogmoed the business, including merchandise worth $2,000, fixtures worth $500 and accounts receivable worth $12,500—a total valuation of $15,000, for the sum of $5,500, of which only $2,000 was paid in cash and the balance by notes.

A sale a year before the sheriff's sale at such price and terms, coupled with the fact that Peters was able to collect in nine months' time only $1,500 on the book accounts at a cost of $800 would not indicate that even a year before the sheriff's sale they were very valuable.

There was no evidence whatever as to their value at the time of the sheriff's sale.

Chief-Justice Gummere, in *Guaranty Trust Co.* v. *Filzgerald Hotel and Development Corp., 97 N. J. Eq. 277,* speaking for this court, said that it has long been the settled doctrine and practice of this state, that judicial sales made without irregularity or fraud, and which had not been affected by accident or mistake, will not be set aside for mere inadequacy of price.

It is equally well settled that a judicial sale, resulting from proceedings entirely regular will be set aside even if there has been no fraud where there is gross inadequacy of price, combined with mistake, surprise, misapprehension or accident, as a result of which the party complaining has been prevented from attending the sale and protecting his interest. *Raphael* v. *Zehner, 56 N. J. Eq. 836.*

There is no allegation in the bill and no proofs in the case of mistake, surprise, misapprehension or accident or that any creditor was prevented from attending the sale and protecting his interest. There is no proof that the sale was not properly advertised and conducted.

It may well be argued that the sale of merchandise and book accounts worth $12,000 to a judgment debtor for $250 might be regarded by this court as so gross, inadequate and unconscionable that slight circumstances ought to quicken the diligence of the court and prompt it to afford relief, if they have resulted in an injustice.

There being, however, no competent proof in this case to prove the value of the personalty and book accounts thus sold by the sheriff, we conclude that the vice-chancellor was right in holding that it was not established that the price was so grossly inadequate as to warrant the setting aside of the sale on that ground.

Nor do we agree with appellant that the employment of Hoogmoed by Peters for a short period after the sale under the circumstances affords convincing proof of fraud.

Peters was a painter by trade and had no knowledge of the business or of the accounts, and some one with experience in the business and knowledge of the accounts was badly needed.

Hoogmoed was available and it was only natural and reasonable that Peters should avail himself of his services.

The appellant further claims that the book accounts were sold by the sheriff without having first obtained the leave of the court or a judge, and that this clearly violates the provisions of an act of the legislature entitled "Supplement to an act respecting executions" (*P. L. 1915 ch. 115*), which provides that "no sale shall be made of such rights and credits, unless by leave of the court, or a judge."

Counsel for appellant claims that the book accounts were within this provision and that no leave of the court or a judge was had before the sale, and that a *nunc pro tunc* order made by Mr. Justice Daly several months after the sale granting leave for the sale and seeking to ratify it was null and void.

It was alleged in the bill of complaint that the sheriff's sale was fraudulent and void in that the sheriff attempted to sell to Peters $8,000 worth of accounts receivable which could not be sold in accordance with the statute in such case made and provided in the State of New Jersey. This was specifically denied in the answer.

This denial placed the burden of proof upon the complainant to show that the statute had not been complied with, and it may well be that if the complainant had established by competent proof that the sale in question was made without having first obtained the leave of the court or a judge, the sale was made in direct contravention of the statute, and that any order made subsequent to the sale seeking to ratify the same would be of no effect. It is not necessary to decide this, however, as there was no competent evidence offered by the complainant which in any manner attacks the regularity of the sale by the sheriff. While the brief of counsel of complainant-appellant states that no order was first obtained for the sale of the accounts receivable, as required by the statute, yet the evidence is silent on the question. The only semblance of proof is found at the opening of the case in a colloquy wherein counsel of appellant complained to the vice-chancellor because an order had been made by Mr. Justice Daly "in connection with a case which materially involved this chancery suit," without notice to him.

In the argument which ensued between counsel concerning this alleged discourtesy, counsel for appellees made a statement by way of explanation why counsel of appellant was not entitled to notice, which would indicate that a sale of the accounts receivable had been made by the sheriff without first having obtained the leave of the court or a judge, and that Mr. Justice Daly had made a *nunc pro tunc* order after the sale without notice to counsel for appellant for the purpose of validating the sale.

This statement was not made nor intended as a stipulation of facts on the record. The vice-chancellor remarked that the question of notice was one of courtesy between coun-

sel and brought the dispute to an end by saying to counsel: "You can put in your proofs if you have any case."

No proofs that the sale of the accounts receivable were made without the leave of the court or a judge were offered.

We do not consider that these statements made by counsel are admissions or evidence sufficient to establish the fact that this sale was not made in full compliance with the legal requirements.

The burden of proof was upon the complainant and he having failed to prove the allegations in the complaint touching this subject, which were denied by the defendant in his answer, we must conclude that the proceedings held in connection with the sale were regular and in accordance with law. The policy of the law is against interfering with the orderly prosecution of judicial sales.

We are of the opinion therefore that the complainant-appellant failed to establish by competent legal evidence the allegations set forth in his bill of complaint and that the decree of the chancellor dismissing the said bill of complaint should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.